Frank S. Hedin (SBN 291289)
E-mail: fhedin@hedinhall.com
David W. Hall (SBN 274921)
E-mail: dhall@hedinhall.com
HEDIN HALL LLP
Four Embarcadero Center, Suite 1400
San Francisco, CA  94104
Telephone: (415) 766-3534
Facsimile: (415) 402-0058

*Counsel for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA HILL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NAVIENT SOLUTIONS, LLC,<br><br>Defendant. | Case No.  5:19-cv-00161-GW-SHK<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Judge: Hon. George H. Wu<br><br>Hearing Date: November 18, 2019<br>Time: 8:30 a.m. |

Plaintiff Amanda Hill submits this reply in support of Plaintiff's Motion for Class Certification (the "Motion"), ECF No. 23, and in response to Defendant Navient Solutions, LLC ("Navient")'s Opposition to Motion for Class Certification (the "Opposition"), ECF No. 26.

## I.    INTRODUCTION

As explained in Plaintiff's Motion, Navient has long been one of the most notorious and well-documented violators of the TCPA.[1]  Year after year, despite countless lawsuits, judicial reprimands, and settlements, Navient's loan servicing and debt collection business relentlessly blasts the public with unsolicited robocalls and text spam.  If any silver lining exists, it's the remarkably complete public record developed across those many lawsuits, which archives in great detail Navient's call center operations, dialing equipment, and recordkeeping, all available for anyone diligent enough to sift through the disparate dockets, depositions, records, reports, testimony, and so on that Navient has submitted (and thus admitted) along the way.

Plaintiff's counsel in this case did exactly that, over months compiling and reviewing well over a thousand pages of Navient employee deposition transcripts, expert reports, rebuttal reports, expert testimony, countless internal Navient records, manuals, and other business records, numerous sworn declarations from Navient's own employees, attorneys (including its counsel of record in this case), experts, and

---

[1] Unless otherwise noted, all defined terms and exhibit references herein are consistent with Plaintiff's Motion.  *See* ECF No. 23.

other authorized representatives, as well as the public websites, vendor documentation, and technical specifications incorporated therein, all collectively painting (one brushstroke at a time) an intricate portrait of Navient's massive calling operation, including detailed specifications for its current Genesys autodialing technology, meticulous recordkeeping systems, and TCPA compliance procedures.

With the benefit of this exacting pre-suit (and ongoing) investigation, Plaintiff's counsel informed the Court and Navient at the May 23, 2019 initial case management conference that class certification in this case would be straightforward and that a just few months of formal discovery to confirm a handful of facts would be plenty.  Thus, the parties agreed to and the Court scheduled a November 18, 2019 hearing on Plaintiff's then-forthcoming motion for class certification.  Since then, Plaintiff followed through as promised, continuing to mine Navient's voluminous public record, compiling an array of admissions and other evidence in support of each Rule 23 requirement, propounding a targeted set of formal requests to fill what few gaps remained, and timely filing the well-supported motion now before the Court.

In contrast, Navient sat on its hands, all the while erroneously presuming that Plaintiff was doing the same.  Navient propounded no discovery, took months (and repeated extensions) before producing any documents in response to Plaintiff's narrowly tailored requests, to date still has not provided a full production or any log of withheld information unilaterally redacted from responsive documents, and never even inquired into deposing Plaintiff.  After Plaintiff reached out in September ahead

- 3 -

of the long-scheduled class certification hearing, Navient's counsel was completely unprepared and refused to discuss any of it, claiming she was "just getting up to speed on the case."  In good faith, Plaintiff then offered a stipulation to continue the hearing and afford Navient's counsel whatever time she needed.  She refused, apparently gaming that Plaintiff too was unprepared. But Plaintiff was well-prepared, already had more than sufficient evidence in hand, and so went forward, filing her motion just as the parties agreed and the Court ordered nearly six months ago.

Now caught off-guard due to its own inaction, Navient responds with disingenuous speculation and *ad hominem* smear.  While admitting that it sent each of the uniform text messages to each of the wrong-number class members uniformly via its Genesys autodialing system, Navient asks the Court to disregard all evidence of that system on speculation that Navient might have two "distinct" Genesys systems, one for text messages, one for voice calls.  Navient knows that isn't true.  Its own records say otherwise.  So have its own employees under oath.  Nor has Navient ever produced any shred of evidence - no declaration, no documentation, no testimony, nothing - even ostensibly indicating it maintains two distinct (redundant) Genesys dialing systems.  Indeed, Navient submitted the exact same "text messaging" Genesys licensing agreement in its voice call cases as it did here, conceding the same Genesys system applies to its text and voice calls alike.

Navient's adequacy challenge is even further off the mark.  Navient attempts to recast Plaintiff's independent investigation as somehow showing a lack of diligence,

- 4 -

but the Ninth Circuit and courts nationwide reject similar adequacy challenges as backward: Far from showing lack of diligence, Plaintiff's exhaustive pre-suit and ongoing independent investigative efforts and sources are to be lauded and preferred, for they avoid the costs, delay, and acrimony that too often encumber formal, adversarial discovery. Navient would rather have Plaintiff depose yet again the same Navient employees concerning the same Genesys dialing system, bogging down this case with the same wasteful discovery disputes that have marked Navient's tact across its countless prior TCPA lawsuits. Plaintiff did not take the bait, instead independently and efficiently compiled sufficient evidence of each Rule 23 requirement, served targeted formal requests to fill the few remaining gaps, and thereby avoided the distraction and delay Navient prefers. Plaintiff's diligent and effective investigation only bolsters her and her chosen counsel's adequacy here.

These and Navient's remaining arguments all contradict the facts and misconstrue the law. Each is debunked below. Plaintiff has demonstrated each Rule 23 requirement with evidentiary proof. Plaintiff's Motion should be granted in full.

## II.   PLAINTIFF HAS DEMONSTRATED EACH RULE 23 REQUIREMENT WITH EVIDENTIARY PROOF

Here at the class certification stage, Plaintiff's burden is to "demonstrat[e] though evidentiary proof" that the proposed class satisfies the requirements of Rule 23(a) and (b)(3). *See Sali v. Corona Regional Medical Center,* 909 F.3d 996, 1002 (9th Cir. 2018). Plaintiff's Motion and supporting evidence more than suffice. *See*

- 5 -

ECF No. 23-1 at 3-7, 8-10 (numerosity), 10-12 (commonality), 12-14 (typicality), 14-16 (adequacy), 16-18 (predominance), 18-20 (superiority); ECF No. 24; ECF No. 25.

With no legitimate counter to Plaintiff's more than sufficient evidence, Navient improperly ask the Court to disregard it all as "inadmissible" or "not relevant." *See, e.g.,* ECF No. 26 at 3, 7. Navient's objections are inapt at every level.

First, as the Ninth Circuit has admonished, "the evidentiary proof a plaintiff must submit in support of class certification . . . ***need not be admissible*** evidence." *Sali*, 909 F.3d at 1005); *Brown v. DirecTV, LLC*, 330 F.R.D. 260, 274 (C.D. Cal. 2019) ("court is not constrained to consider only admissible evidence in evaluating whether Rule 23's requirements are met") (quoting *Sali*, 909 F.3d at 1005). Thus, admissible or not, Plaintiff's evidentiary showing is properly before the Court. *Id*.

Second, Plaintiff's evidence certainly is admissible. Navient's prior employee and 30(b)(6) deposition testimony, interrogatory responses, declarations, expert reports, and other prior statements (all publicly submitted by and on behalf of Navient in prior TCPA actions) constitute party admissions, all admissible under Fed. R. Evid. 801(d)(2). [2] *See In re Hanford Nuclear Reservation Litig*., 534 F.3d 986 (9th Cir.

---

[2] Navient objects on the basis of a purported "Fed. R. Civ. P. 30(a)(8)" that does not exist. ECF No. 26 at 7 n.3 (arguing "deposition transcripts from other actions are inadmissible" under "Fed. R. Civ. P. 30(a)(8)"). The actual rule Navient apparently meant to reference is Fed. R. Civ. P. 32(a)(8), which read in full directly contradicts Navient's misquote. In the next sentence after the "same subject matter between the same parties" language Navient cribs, Rule 32(a)(8) states: "A deposition previously taken may also be used as allowed by the Federal Rules of Evidence." Fed. R. Civ. P 32(a)(8). Rule 801 is a federal rule of evidence. Thus, admission of Navient's prior

- 6 -

2008) (prior expert testimony admissible as party admission); *Marceau v. Internation Broth. of Elec. Workers*, 618 F. Supp. 2d 1127, 1142-1143 (D. Ariz. 2009) (prior expert report "admissible as an admission by a party-opponent" because it is "a statement by a person authorized by the party to make a statement concerning the subject.").[3]  The rest are business records produced by Navient.  *See Orr v. Bank of America, NT & SA*, 285 F.3d 764, 777 n.20 (9th Cir. 2002) (documents produced by party admissible if offered by opponent).[4][5]

Third, Plaintiff's evidence is also plainly relevant.  It describes in great detail the Navient dialing technology, business records, recordkeeping systems, TCPA compliance procedures, and employee practices at issue in this case.  *See* ECF No. 23-1 at 3-8.  Navient admits (and the evidence establishes) that it sent the same text

---

deposition testimony as party admission complies with Fed. R. Civ. P. 32(a)(8).  *See Jenkins*, 785 F.2d at 1393; *Marceau*, 618 F. Supp. 2d at 1142-1143.

[3] *See also Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292, 1306-1307 (9th Cir. 1983) (prior expert report "authorized" by defendant); *U.S. v. Jenkins*, 785 F.2d 1387, 1393 (9th Cir. 1986) (prior deposition testimony "clearly admissible"); *New Show Studios LLC v. Needle*, 2016 WL 5745078 (C.D. Cal. 2016) ("A corporation's  30(b)(6) deponent speaks on behalf of the corporation and therefore the deponent's statements are generally admissible against a corporate party as statements by a party-opponent").

[4] Even at later stages like summary judgment, Navient's "foundation" and other form objections would still make no sense.  *See* ECF No. at 7.  Whether evidence is "admissible" at pre-trial stages turns not on "the admissibility of the evidence's form" but rather "the admissibility of its contents."  *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003).  If the contents of that evidence could potentially be presented in a form admissible at trial, it is "admissible" in support of pre-trial motions.  *Id*.

[5] Navient's judicial notice objections are out of left field.  *See* ECF No. 7 n.4.  Plaintiff submitted party admissions and other admissible evidence in support of every Rule 23 requirement.  Plaintiff does not (and need not) request judicial notice of anything.

REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
CASE NO. 5:19-cv-00161-GW-SHK

messages to wrong numbers uniformly via its Genesys dialing system. *See* ECF No. 26 at 8; *see also* Ex. 9 (admitting subject text messages were sent via Navient's Genesys dialing system). Plaintiff's evidence consists of recent testimony, documentation, and expert analysis submitted by and on behalf of Navient (under oath no less) describing that very same Genesys dialing system, how it is used and documented by Navient, and the system's track record of generating hundreds of thousands of calls to wrong numbers. *See* ECF No. 23-1 at 4 n.4-5, 5 n.6-8, 6 n.9-11.

Navient's attempt to write this evidence off as regarding only "voice calls" is utterly disingenuous. *See* ECF No. 26 at 8-9. There is no evidence or other indication whatsoever (in this case or any other case) that Navient maintains two Genesys dialing systems for voice versus text calls. It would make no sense (two identical, redundant systems, each with the same capacity as the other), and Navient's own records admit the opposite. *See, e.g.*, Ex. 17 (Navient Production, Hill-02184-2178) (stating same Genesys dialing system is used for "all outbound and inbound calls," including both "voice" and "text" calls). Navient's employees have admitted the same. *See* Ex. 1 at 33:17-21 (Q: "You said Genesys is the only system Navient uses to make outbound calls?" A: "Correct."). Nor is there any evidence (produced by Navient or elsewhere) that Genesys even markets distinct systems for voice versus text calls. *Cf.* Ex. 4 (Genesys webpage descriptions of its system's autodialing modes, drawing no distinction between voice and text calls).

REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
CASE NO. 5:19-cv-00161-GW-SHK

More still, the supposed "only text messaging" Genesys licensing agreement Navient produced in this case, ECF No. 26 at 8, is the exact same Genesys licensing agreement Navient produced in its "voice call" cases. *Compare* Ex. 7 (Genesys licensing agreement produced by Navient in this case), *with* Ex. 18 (exact same Genesys licensing agreement produced by Navient in purported "voice call" case). And, to no surprise, the settlement release Navient signed in those "voice call" cases in fact expressly encompasses "text messages" sent by that same Genesys dialing system as well. *See* Ex. 19 (Settlement Agreement and Release in purported Navient "voice call" case, expressly releasing claims for "calls" sent by Navient's Genesys autodialing system "including text messages"). The Court need not speculate. Navient's "distinct" Genesys systems are pure fiction.

Because Plaintiff's admissible, relevant evidence cannot be disregarded wholesale as Navient contends, it remains properly before the Court and unopposed (Navient has submitted no contrary evidence at all), and thus more than suffices here to support each requirement under Rule 23.

Navient's remaining arguments fails for the same reason, as explained below.

**A. Joinder Is Impracticable**

Navient's argument under Rule 23(a)(1) simply pronounces that Plaintiff "provided no facts." ECF No. 26 at 9. That's not true. *See supra.* Rather, Plaintiff provided evidence showing that Navient admittedly used its Genesys dialing system to send all of the uniform text messages pursuant to a uniform campaign applicable

- 9 -

nationwide to Navient's approximately 10 million accounts.  *See* ECF No. 23-1 at 3-5.  Plaintiff also provided evidence showing that, under the licensing agreement governing that Genesys dialing technology, Navient was bound to a minimum annual spend of $170,000 at a standard rate of $0.02 per text message, which translates into (at minimum) ***8.5 million text messages per year***.  *See* Ex. 7. Plaintiff also provided evidence showing that Navient admits, as to a similar subset of 9.6 million calls made during an overlapping time period via the exact same Genesys dialing technology, that approximately 476,000 (*i.e.*, ***5%***) were to wrong numbers.  *See* Ex. 2.  Applying this admitted 5% wrong-number rate to even a single year's worth of Navient's contractual minimum translates into 425,000 text messages being sent to wrong numbers via its Genesys dialing system, just as occurred with Plaintiff here.

Plaintiff has further provided evidence showing the extremely broad criteria Navient set for this particular text message campaign (essentially accounts past due, with no geographic limit), which likely encompasses a substantial portion (if not the large majority) of Navient's approximately 10 million accounts nationwide.  *See* ECF No. 23-1 at 5 n.7; *see also* Ex. 9.  But even assuming this widespread campaign somehow only accounted for 1% of the minimum 8.5 million text messages Navient sent via its Genesys dialing system in a given year, it would still translate into over 4200 subject text messages sent to 4200 wrong numbers class members spread out across the country.  Of course, the actual numbers are surely higher, given that more than one year of text messages are at issue, Navient has produced nothing indicating

REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
CASE NO. 5:19-cv-00161-GW-SHK

it limited itself to the minimum under its Genesys licensing agreement, and the broad, nationwide criteria of this particular text message campaign suggests general application across Navient's over 10 million accounts.  Still, even on these exceedingly conservative estimates, Plaintiff's evidence and the common-sense inferences therefrom more than suffice.  As explained in Plaintiff's opening motion, courts in TCPA and other class action cases routinely rely on far less to infer numerosity.  *See* ECF No. 23-1 at 8-10.[6]

Navient's opposition fails to address any of this.  No discussion of the cases. No discussion of the facts.  No contrary evidence whatsoever.  Instead, Navient places all of its chips on misdirection, claiming its admissions from prior cases should be discounted because (1) the cases "involved voice calling," (2) the Genesys licensing agreement produced in this case references "text messaging," and thus (3) the Court should (so it goes) infer that Navient perhaps has two "distinct" Genesys dialing systems, one for voice calls and one for text messages.  ECF No. 26 at 8. Navient's speculation is utterly disingenuous: Navient itself has repeatedly (and

---

[6] *See also Knapper v. Cox Communications, Inc.*, 329 F.R.D. 328, 241 (D. Ariz. 2019) (finding numerosity based on "general knowledge and common sense" inference from "millions of calls per year and thousands . . . [to] wrong numbers"); *West v. California Services Bureau, Inc.*, 323 F.R.D. 295, 303 (N.D. Cal. 2017) (given millions of calls to thousands of numbers, "common sense" estimate from presumed "10% wrong number rate" "satisfied numerosity requirement"); *Californians for Disability Rights, Inc. v. California Dept. of Transport*, 249 F.R.D. 334, 347 (N.D. Cal. 2008) (explaining that courts regularly extrapolate from general statistics and "common sense assumptions to support a finding that joinder would be impracticable.")

REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
CASE NO. 5:19-cv-00161-GW-SHK

recently) submitted the very same Genesys licensing agreement it produced here in its voice call cases, conceding it also governs the Genesys dialing systems at issue in those voice call cases.  *See* Ex. 18.   In other words, Navient has already publicly acknowledged that its purported Genesys text and voice dialing system(s) are one and the same.  Navient's documents and testimony confirm this as well.  *See supra*.  And, not surprisingly, across many years of TCPA litigation, and countless depositions, interrogatories, expert reports, etc., not once has Navient ever before indicated that it maintains distinct (duplicative) Genesys dialing systems for voice calls versus text messages.  The reason is obvious: Navient does not have two, distinct Genesys dialing system for voice versus text calls; It has one, governed by the single license agreement identically produced in both its text and voice call cases.

But even if Navient truly did maintain "distinct" Genesys systems for voice versus text calls (again, that is pure fiction), it would not undermine Plaintiff's showing one whit.  Regardless, Navient admits that all of the text messages at issue here were sent pursuant a single Genesys dialing system governed by the exact same licensing agreement as that which Navient admittedly used for its voice calls, with the exact same features, detailed in the same licensing agreement, subject to the exact same cost per message/call and the exact same yearly minimum (8.5 million calls/texts per year), and thus resulting in a similar (if not identical) wrong-number rate.  *See supra*.  However Navient labels its "two" identical systems, they have the same features; thus the wrong number rate of one is indicative of the other.

REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
CASE NO. 5:19-cv-00161-GW-SHK

Finally, even if the foregoing reasonable estimates, based on relevant evidence and Navient's own admitted recent experience, were insufficient standing alone, the "number of class members is not the sole determining factor" under Rule 23(a)(1). *See In re Lidoderm Antitrust Litig.*, 2017 WL 679367, at *13 (N.D. Cal. 2017) (quoting *Jordan v. Cty. of L.A.*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982)).  Rather, where class size is unclear, "the number of class members does not weigh as heavily," and instead courts consider "other factors" such as "(i) judicial economy, (ii) geographic dispersion, (iii) the financial resources of class members, (iv) their ability to sue separately, and (v) requests for injunctive relief that would involve future class members."  *Id.*

Here, all other factors weigh against joinder and in favor of class treatment. The text message campaign at issue was blasted across Navient's over 10 million customer accounts nationwide without geographic limitation.  *See* Ex. 9; *Pole v. Estenson Logistics, LLC*, 2016 WL 4238635 (C.D. Cal. 2016) (numerosity often "met where plaintiffs were merely dispersed across counties within the same state.").  That nationwide text message campaign targeted debtors delinquent on loan payments and thus who likely lack the financial resources to launch and prosecute individual lawsuits, certainly not here where their recovery is statutorily capped at less than the cost to file and serve an individual complaint.  *Id.*  And in light of Navient's long history as a chronic violator of the TCPA, as well as Navient's ongoing texting campaigns, Plaintiff specifically seeks injunctive relief to protect future class

- 13 -

members as well. *See* ECF No. 1 at 11; *Sueoka v. U.S.,* 101 Fed. Appx. 649, 653 (9th Cir. 2004) ("Because plaintiffs seek injunctive and declaratory relief, the numerosity requirement is relaxed and plaintiffs may rely on [ ] reasonable inference[s] . . . that the number of unknown and future members of [the] proposed []class . . . is sufficient to make joinder impracticable.").

Given all these circumstances, as well as the common-sense estimates detailed above, joinder is plainly impracticable. *See, e.g., Rannis v. Recchia*, 380 Fed. Appx. 646, 651-52 (9th Cir. 2010) (explaining that numerosity "is not tied to any fixed numerical threshold . . . and imposes no absolute limitations," but rather turns on whether "joinder is impracticable"; affirming certification of 20 member class where "separate lawsuits" would "impos[e] unnecessary financial burdens on class members whose damages likely would not exceed $600").

## B. The Class's Claims Share Common Questions

Plaintiff's motion identified a host of common questions. ECF No. 23-1 at 10-12 (*e.g.*, whether Navient's uniform dialing system constitutes an ATDS; whether Navient's uniform records reflect lack of prior express written consent from non-signatories like Plaintiff). In response, Defendant ignores all but one - whether the uniform text message content sent to all class members constitutes telemarketing. This only underscores the question's obvious commonality. ECF No. 26 at 11-12. Navient used the same system to initiate its calls and its texts, and certainly the same system to send the same text message to each of the class members in this case.

- 14 -

Whether that singular, uniformly used piece of technology constitutes an ATDS is a question capable of resolution class-wide in one stroke with common proof.

Navient contends "it is clear on the face of the message" – a message by definition uniformly sent to each class member - that its purpose was loan forbearance, which Navient then contends is not an "offer for . . . services" and thus not telemarketing requiring prior express written consent under the TCPA.   *Id*. Navient's analysis is contrary to law, for numerous courts have held similar calls and texts from loan servicers offering forbearance, refinancing, and the like do "encourage[] the purchase . . . services" and thus do "qualif[y] as telemarketing calls."  *See, e.g., Sieleman v. Freedom Mortgage Corp*., 2018 WL 3656159, at *8-*9 (D. N.J. 2018).  Regardless, the question itself is certainly common: It turns on the uniform content of a uniform text message uniformly sent to each and every class members; Either that uniform content constitutes telemarketing, or not; Either way, the question is "susceptible to being resolved in a single stroke, based on the same evidence." *Bennett v. GoDaddy.com LLC*, 2019 WL 1552911, at *5 (D. Ariz. 2019).

This and the other common questions detailed in Plaintiff's Motion (which Navient ignores) each, standing alone, satisfy Rule 23(a)(2).  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("even a single common question will do").

## C. Navient Concedes Plaintiff's Typicality

Because it cannot, Navient does not contest Plaintiff's typicality.  Plaintiff and each class member received identical text messages sent by Navient via the same

- 15 -

Genesys dialing system at times when Navient's own records already reflected (and still reflect) that the messages were intended for someone else. *See* ECF No. 23-1 at 12-13. Plaintiff is not subject to any unique defenses. *Id*. Thus, Plaintiff's and each class member's claims will turn on the same facts and legal theories proved with same evidence. *See, e.g.*, *Brown v. DirecTV, LLC*, 330 F.R.D. 260, 267 (C.D. Cal. 2019) (typicality satisfied in similar wrong-number TCPA class action).

**D. Plaintiff and Class Counsel Adequately Represent the Class**

As courts oft-caution, "[p]ermitting defendants to police the adequacy of class representatives and their counsel is like 'permitting a fox . . . to take charge of the chicken house.'" *In re Pfizer Secs. Litig.*, 282 F.R.D. 38, 48 (S.D.N.Y. 2012) (collecting cases). They "interpose arguments" ostensibly "grounded upon a concern for the 'best' representation for the class while the implicit, but nonetheless real, objective . . . is to insure 'no' representation for the class." *Umbriac v. American Snacks, Inc.*, 388 F. Supp. 265, 275 (E.D. Pa. 1975). As such, courts "must be wary of a defendant's efforts to defeat representation [] on grounds of inadequacy." *In re Computer Memories Sec. Litig.,* 111 FR.D. 675, 682 (N.D. Cal. 1986).

This caution is particularly apt here, where Navient, having found absolutely no purchase in evidence or law, resorts to aspersions on Plaintiff and her counsel for purportedly "fail[ing] to vigorously pursue discovery" and "recycl[ing] evidence from another action." ECF No. 26 at 14. These criticisms ring hollow and are contrary to law. It was because of, not in spite of, Plaintiff's exceedingly thorough

- 16 -

REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
CASE NO. 5:19-cv-00161-GW-SHK

pre-suit and ongoing investigation of Navient's uncommonly revealing public record that so few evidentiary gaps were left requiring formal discovery.  Plaintiff diligently filled those few gaps with well-targeted formal discovery requests.  Meanwhile, Navient sat on its hands, mistaking Plaintiff for the same and hoping to run the clock.  Now having been outflanked with the more than sufficient evidence compiled through Plaintiff's exhaustive independent investigation, Navient attempts to recast Plaintiff's diligence and initiative as somehow showing lack thereof.  Nonsense.

Formal discovery is but one in a wide array of tools at a litigant's disposal.  Others include private investigation, public records, informal discovery, expert opinion, party admissions and other evidence developed in prior or related litigation, facts subject to judicial notice, and the list goes on.  As such, it is no surprise that the Ninth Circuit has repeatedly admonished that "formal discovery is not a necessary ticket" to adequate representation.  *See Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239-40 (9th Cir. 1998) (rejecting adequacy challenge that "class counsel failed to engage in formal discovery" because "formal discovery is not a necessary ticket;" and holding that "plaintiffs may rely on discovery developed in prior or related proceedings").  As long as Plaintiff's and their counsel develop "sufficient information," it is not for courts (much less defendants) to second guess by what legitimate tactics and means that information was secured.  *See In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000).  If anything, informal investigation is lauded because it can avoid the costs and delay that too often encumber the formal,

adversarial discovery process.  *See, e.g.*, *Munday v. Navy Federal Credit Union*, 2016 WL 7655807, at *9 (C.D. Cal. 2016) (counsel found adequate in TCPA wrong number class action where, unlike here, no formal discovery had been conducted; explaining that "[d]iscovery can be both formal and informal"); *Lee v. Ocwen Loan Servicing, LLC*, 2015 WL 5449813, at *24 (S.D. Fla. 2015) ("To avoid squandering the parties' resources, informal discovery can be preferred," for precedent has "debunked the myth that a great amount of formal discovery must be conducted in every case"; "In addition to wasting the time of th[e] Court, the parties and their attorneys, it often adds unnecessarily to the financial burden of litigation," and "extra-judicial process [and] informality in the discovery of information is desired.").[7]

While Navient would rather have had Plaintiff depose (yet again) the same Navient employees on the same topics concerning the same Genesys dialing system, getting drawn into the same sandbagging discovery motion practice that has marked Navient's tact across its earlier TCPA actions, Plaintiff did not take the bait.  Instead, Plaintiff continued to independently and efficiently compile sufficient evidence of each Rule 23 requirement, served targeted formal document requests where needed to

---

[7] *See also Messineo v. Ocwen Loan Servicing, LLC*, 2017 WL 733219, at *5-*6 (N.D. Cal. 2017) (praising that 70% of "Class Counsel's hours in the case were incurred in pre-suit investigation"); *Lewis v. Green Dot Corp.*, 2017 WL 4785978, at *11 (C.D. Cal. 2017) (finding counsel adequate even where they "did not engage in formal discovery" and instead relied on "information and data" from earlier case involving same defendants); *Clesceri v. Beach City Investigations & Protective Services, Inc.*, 2011 WL 320998, at *9 (C.D. Cal. 2011) (finding class counsel adequate where "only informal discovery ha[d] been conducted").

REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
CASE NO. 5:19-cv-00161-GW-SHK

fill the few gaps that remained, and thereby saved the parties and Court the distraction and delay Navient would have preferred.  This record reflects unflagging, effective advocacy, not any lack of diligence by Plaintiff or her counsel.

Navient's inapposite citations only further undercut its argument.  In *Motty v. First Student, Inc.*, plaintiff's counsel had, across four related actions, failed three times over to timely move for class certification, submitted no evidence in support, failed to conduct any formal or informal discovery at all, and failed to even make initial disclosures.  2016 WL 4498452, at *4 (C.D. Cal. 2016).  In *Quinonez v. Pharm. Specialties, Inc.*, plaintiff's counsel had never before represented a certified class, failed to conduct any formal or informal discovery, failed to make initial disclosures, repeatedly missed briefing and other court-ordered deadlines, "submitted no substantive evidence at all," and actively obstructed the defendant's attempts to depose the plaintiff.  2017 WL 4769436, at *4 (C.D. Cal. 2017).  And in *Buckland v. Maxim Healthcare Service, Inc.*, plaintiff's counsel asked the court to ***appoint a dead plaintiff as class representative***, made no attempt to find a replacement, conducted no formal discovery or independent investigation, submitted no declarations from any proposed class representative, and copied its theory and briefing verbatim from a competing case.  2012 WL 3705263 (C.D. Cal. 2017).  These extreme cases bear no resemblance to Plaintiff's diligent investigation here and the substantial, undisputed evidentiary proof she and her counsel have submitted in support of Plaintiff's Motion. *Cf. Morales v. Kraft Foods Group, Inc.*, 2017 WL 2598556, at *28 (C.D. Cal. 2012)

- 19 -

(rejecting similar attempt to misapply the extreme inadequacy at issue in *Buckland* line of cases to "markedly different" circumstances).

Navient's smears aside, adequacy turns on two questions: (1) Whether Plaintiff's interests align with the Class; and (2) Whether her chosen counsel are experienced and qualified. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  As demonstrated in Plaintiff's Motion, Plaintiff's interests are perfectly aligned with the Class, and the attorneys of Hedin Hall LLP not only have extensive experience successfully prosecuting and resolving complex class actions, including similar TCPA class actions, but have already demonstrated their ability and commitment in this case. *See ECF No. 23-1 at 14-15; Ex. 10; Ex. 11; *see also supra*.

**E. Common Questions Predominate**

As to predominance, Navient simply parrots the same "maybe two Genesys systems" refrain debunked above. *See ECF No. 26 at 11.*  Again, there is no evidence whatsoever that Navient maintains two, redundant Genesys dialing systems, and in fact Navient's own records and testimony admit the opposite. *See supra.*  As such, every member of the putative class asserts the exact same TCPA claims arising from their receipt of identical text messages sent by Navient, and Plaintiff's admissible, relevant evidence demonstrates that each of those text messages was sent via the exact same Genesys dialing technology at a time when Navient's own business records reflected (and still reflect) that the text messages were intended for someone other than the class member who receive them. *See supra*; *see also* ECF No. 23-1 at

3-8.  Accordingly, neither consent nor any other legal or factual issue in this case poses any risk of predominant individualized issues.  On similar facts, courts routinely find common issues predominate.  *See Bennett*, 2019 WL 1552911; *Knapper*, 329 F.R.D. 238; *West*; *Reyes v. BCA Fin. Services, Inc.*, 2018 WL 3145807 (S.D. Fla. 2018); *Johnson v. Navient Solutions, Inc.*, 315 F.R.D. 501 (S.D. Ind. 2016).

### F.  A Class Action Is Superior

Navient argues that Plaintiff failed to "reveal how she intends to identify class members."  ECF No. 26 at 12-13.  Wrong on the law, wrong on the facts.

As a matter of law, and contrary to the abrogated "ascertainability" cases Navient relies on, the Ninth Circuit has explained that "the language of Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification."  *Briseno v. ConAgra Brands, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017); *cf.* ECF No. 26 at 12-13 (citing exclusively pre-*Briseno*, abrogated cases).  Since *Briseno*, courts in TCPA actions have consistently rejected similar attempts to hide behind potential ambiguity in defendants' own records.  *See, e.g., Moser v. Health Insurance Innovations, Inc.*, 2019 WL 3719889, at *12 (S.D. Cal. 2019) (certifying wrong number TCPA class over similar objection, noting that "the Ninth Circuit has previously rejected this type of ascertainability argument," and explaining that "to deny class certification on the grounds that identifying class members would be too difficult . . . would create an incentive for future telemarketers to avoid keeping records.").

As a matter of fact, Navient has already admitted that it keeps meticulous records of all text messages it sends through its Genesys dialing system, including the campaign criteria, the name of the person associated at the time of the call with the telephone number called, whether the calls were sent to a wrong or reassigned number, whether and when ownership of the telephone number changed, and what Genesys setting was used.[8]  Navient also maintains records of its customers' consent.[9]  Based on its comprehensive, searchable records, Navient further admits it can identify the actual intended recipient of its wrong number text messages.[10]

Navient's criticism of the term "signatory" is unfounded.  ECF No. 26 at 12 n.6.  Navient's own records associate both borrowers and "cosignors" to particular accounts and associated loans.  *See* Ex. 17.  The class definition's use of the term "signatory" functions to exclude both the borrower (the original signatory) and any cosignors associated with the account.  Plaintiff and class members are thus easily identifiable: their names do not appear in Navient's records as the borrower, cosignor, or other intended recipient of the text messages they received; they

---

[8] *See, e.g.,* Ex. 5 at 40:19-42:12 (admitting that Navient records include "complete account history" of each "correspondence sent from Navient to a borrower and any correspondence received by Navient from a borrower.").

[9] *See, e.g.,* Ex. 1 at 52:16-24 (admitting that Navient can "go in and say everything that has consent and get a count if that's what you're looking for.").

[10] *See, e.g.,* Ex. 2 at 150:6-23. (Q: "[Navient] could produce a list of the phone numbers with [] wrong number codes, right?" A: "Yes." Q: "Could [Navient] identify the names of the people that its records associate with those telephone numbers?" A: "We can see who we were attempting to call.").

REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
CASE NO. 5:19-cv-00161-GW-SHK

provided no prior express consent (written or otherwise); and simple reverse lookups (with self-identifying affidavits if needed) can establish each as a subscriber of the particular telephone number at the time the unsolicited text messages were received.[11] Courts routinely endorse similar methods.  *See, e.g., West*, 323 F.R.D. at 306.[12]

## III.   PLAINTIFF COMPLIED WITH LOCAL RULE 7-3

As a final Hail Mary, Navient misrepresents that Plaintiff failed to comply with Civil Local Rule 7-3.  ECF No. at 5.  Not true.  Plaintiff's and Navient's counsel first discussed the substance of Plaintiff's Motion back in April and then again in connection with the joint report the parties filed the ahead of the May 23, 2019 initial case management conference.  *See* Reply Declaration of David W. Hall ("Hall Reply Decl.").[13]  The parties' counsel then discussed it again in person during and after the

---

[11] *See, e.g.,* Ex. 2 at 151:23-152:9 (Q: "So we have 467,000 people and those are people to whom Navient attempted to reach by making an autodialed call to a cell phone number after Navient's records showed a wrong number code for those cell phones. How would Navient put together a list of the people -- the names of the people that it was attempting to reach in connection with those calls? A: "We'd match the dialer records to the account number that we see on the call log.").

[12] While unnecessary (because the meaning is plain from Navient's own records), the Court is free to revise the definition to replace "signatory on a Navient account, as reflected in Navient's records" with "borrower, cosignor, or other person expressly associated with a Navient account, as reflected in Navient's records."  *See Wolf v. Hewlett Packard Co.*, 2016 WL 7743692, at *16 (C.D. Cal. 2016) (court has "discretion to revise the class definition").

[13] All arguments and evidence herewith respond directly to issues raised in Defendant's Opposition.  *See Great American Ins. Co v. Berl*, 2017 WL 8180627, at *1 (C.D. Cal. 2017) (evidence and argument on reply "is not 'new' when it is made in response to an issue raised in an earlier briefing").

- 23 -

May 23 conference, explaining that given Plaintiff's investigation, this would be a straightforward wrong-number case presenting few if any individualized issues, and thus that several months of targeted discovery should be enough. *See* Hall Reply Decl.  The Court then scheduled a hearing on Plaintiff's Motion for November 18, 2018, with Plaintiff's reply brief due November 4, 2018, and specifically affording the parties an opportunity to stipulate to a different briefing schedule if need be. *Id*. Then in September, Plaintiff's counsel again reached out to Navient's counsel to further meet-and-confer ahead of the long-scheduled class certification hearing. *Id*. Navient's counsel ultimately agreed to speak by telephone on October 7, 2019. *Id*.

During that call, Plaintiff's counsel attempted to explain both the deficiencies in Navient's discovery responses as well as how each related to the substance of Plaintiff's imminent motion for class certification. *Id*.  But Navient's counsel was completely unprepared and refused to discuss any of it, claiming she was "just getting up to speed on the case." *Id*.  In good faith, Plaintiff offered a stipulation to continue the hearing to afford Navient' counsel whatever time she needed, following up through a series of emails. *Id*.  Navient's counsel refused, apparently gaming that Plaintiff was equally unprepared and would be jammed by the hearing date, unable to timely support her motion. *Id*.  But Plaintiff already had more than ample evidence in hand and so, despite Navient's gamesmanship, timely filed as the Court had ordered months before, along with an accurate statement that the motion was made "in compliance with" Civil Local Rule 7-3.  *See* ECF No. 23 at 2.

- 24 -

These calls, in person meetings, discussions in open court, then more calls and emails more than satisfy Local Rule 7-3.  It cannot be that Navient's sheer unpreparedness on a call results in Plaintiff having violated the rule.  Even if it did, Navient suffered no prejudice.  Plaintiff's Motion has been on calendar for months. Plaintiff made every effort to engage Navient's counsel.  When she was unprepared (or unwilling) to discuss the substance, Plaintiff offered a stipulation to afford her whatever additional time she needed.  She refused.[14]

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion should be granted in full.

Dated: November 4, 2019                    Respectfully submitted,

                                           HEDIN HALL LLP

                                           /s David W. Hall
                                            David W. Hall

                                           Four Embarcadero Center, Suite 1400
                                           San Francisco, CA  94104
                                           Telephone: (415) 766-3534
                                           Facsimile: (415) 402-0058
                                           dhall@hedinhall.com

                                           *Counsel for Plaintiff and Putative Class*

---

[14] *Compare Carmax Auto Superstores California LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1088 (C.D. Cal. 2015) (Rule 7-3 is discretionary; no violation where "non-moving party has suffered no apparent prejudice"), *with Bozin v. Collecto, Inc*., 2015 WL 12669979, at *1 (C.D. Cal. 2015) (motion was filed before any responsive pleading yet noticed a hearing date more than thirteen months out, which prejudiced defendant and "clearly violate[d] the spirit and intention of" Local Rule 23-3).

REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
CASE NO. 5:19-cv-00161-GW-SHK

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2019, I authorized the electronic service of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to the e-mail address of each counsel of record.  I hereby certify under penalty of perjury under the laws of the United State of America that the foregoing is true and correct.  Executed on November 4, 2019.


/s/David W. Hall
David W. Hall

REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
CASE NO. 5:19-cv-00161-GW-SHK